```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
ICON DE HOLDINGS LLC, as successor in interest to                 :
STUDIO IP HOLDINGS LLC,                                           :
                                                                  :
                                    Plaintiff,                    :
                                                                  :
                    -v-                                           :
                                                                  :
EASTSIDE DISTRIBUTORS,                                            :
                                                                  :
                                    Defendant.                    :
                                                                  :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/28/2015

14 Civ. 2832 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On July 15, 2015, the Court held a conference in this case, at which it resolved three motions from the bench. Specifically, the Court granted defendant Eastside Distributors' ("Eastside") motion to vacate the default judgment that had been entered in August 2014, and denied plaintiff Icon DE Holding LLC's ("Icon") cross-motions to retroactively correct the case caption and for attorneys' fees. *See* Dkt. 28, 33. At the same conference, the Court also denied Icon's oral motion to condition *vacatur* on defendant's posting of a bond, because Icon had not previously briefed or raised the issue (despite its considerable filings). Dkt. 33. However, the Court permitted Icon to submit a letter brief if it could provide authorities supporting its position. *Id.* On July 21, 2015, Icon submitted a letter brief, requesting (1) reconsideration or reargument of the Court's decision holding that service of the Complaint on Eastside was not properly effected; (2) reconsideration or reargument of the Court's decision denying Icon's request to condition *vacatur* on defendant's posting of a bond; and (3) in the alternative, "that the Court exercise its inherent power to sanction Eastside for its willful disobedience" of the Court's July

2014 order to show cause, and award Icon its attorneys' fees of more than $84,000.  Dkt. 29.  For the reasons that follow, all three of Icon's requests are **denied**.

*First*, Icon seeks reconsideration of the Court's ruling that service of the Complaint on Eastside and/or Nils was not properly effected.  As a preliminary matter, the Court did not invite further briefing on this topic.  *See* Dkt. 33.  Nonetheless, the Court will address this request for reconsideration, too.

The standard governing motions for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted).  Such a motion is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced."  *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005); *see also Goonan v. Fed. Reserve Bank of N.Y.*, No. 12 Civ. 3859 (JPO), 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5, 2013) ("Simply put, courts do not tolerate such efforts to obtain a second bite at the apple.").  Rather, reconsideration is appropriate "only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted).

Icon fails to meet this stringent test.  In its July 15 decision, the Court held that Icon failed to serve Eastside and/or Nils properly because Icon attempted to, but did not, comply with the strictures of the Hague Convention; specifically, Icon did not supply a copy of the summons and complaint that had been translated into French, as required by Article 5 of the Hague

Convention as Quebec has implemented it. *See* Dkt. 33. In its motion for reconsideration, Icon contends that whether it "*intended* to serve under the Hague Convention is irrelevant; whether process was actually served is the issue." Dkt. 29, at 2. As an initial matter, the parties' briefing previously addressed this question, making it a particularly poor candidate for a reconsideration motion. *See Associated Press*, 395 F. Supp. 2d at 19. In any event, on the merits, Icon is wrong. The Second Circuit has squarely rejected Icon's argument: "We reject the notion that 'actual notice' suffices to cure a void service." *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991).

Specifically, Federal Rule of Civil Procedure 4(f) enumerates three possible ways to effect service abroad. *See* Fed. R. Civ. P. 4(f)(1)–(3). The first, Rule 4(f)(1), provides that any method of service authorized under the Hague Convention constitutes effective service. The second, Rule 4(f)(2), addresses service in situations where there is no international agreement, or the agreement is unclear as to the appropriate means of service; this subsection does not apply to Icon, because Canada and the United States are signatories to an international agreement, the Hague Convention, which clearly delineates methods of service. The third, Rule 4(f)(3), permits service "by other means not prohibited by international agreement, as the court orders"; this subsection does not apply here, because Icon did not request that the Court order—and the Court did not order—service in a particular manner. Accordingly, Icon needed to comply with Rule 4(f)(1), which requires compliance with the Hague Convention.

That Convention, in turn, provides for two means of service. First, Article 5 service is formal; it entails serving through a state's central authority. Second, Article 10(a) service is informal; for instance, it permits plaintiff to directly mail the defendant or to serve through hand-delivery. Thus, Icon could have, in compliance with the Hague Convention, served Eastside

3

informally by directly mailing the summons to Eastside or contacting a bailiff directly to arrange for service by hand.  Instead, however, Icon decided to serve process through Article 5 of the Convention, as Icon admitted before these *vacatur* proceedings.  *See* Dkt. 8, Aff. of Andrew T. Hambelton ¶ 7 ("[W]e effectuated personal service of the Summons and Complaint upon Eastside on May 28, 2014, through the Central Authority of Quebec as required by the Hague Convention.").  That choice was, of course, Icon's to make; but as a result, it was obliged to comply with Article 5's requirements.

Article 5 of the Hague Convention provides that the Central Authority of each state "may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed."  *See Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, Nov. 15, 1965, TIAS No. 6638.  And, significantly here, Quebec requires the translation of *all documents which commence actions*.  *See id.*; *Translation Requirements*, Justice Quebec, http://www.justice.gouv.qc.ca/english/programmes/sneaje/traduction-a.htm (last visited July 23, 2015).  Icon admits that it did not translate the documents it served.  It is true that the Central Authority for Quebec "may, *upon request*, allow a translation in English at the condition that the recipient understands this language."  Dkt. 20 (Icon Br.), at 16 (citing *Canada—Central Authority & Practical information*, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=authorities.details&aid=248 (emphasis added).  But Icon does not indicate, let alone demonstrate, that it ever requested or obtained an exception to the translation requirement from the Central Authority for Quebec.  Icon's service was therefore improper.

Its motion for reconsideration is, accordingly, denied.

4

*Second*, Icon seeks reconsideration of the Court's decision denying Icon's request to condition *vacatur* on defendant's posting of a bond. Dkt. 29. Icon argues that "[b]ecause service of process was properly effected, . . . vacatur of the default [should] be conditioned on Nils posting a bond in the amount of $1,089,546.90, which is the damages sought in the Complaint plus accrued interest through June 30, 2015, and the imposition of attorneys' fees." *Id.* Icon thus primarily tethers its bond argument to its argument that service was proper. Concluding that service was *improper*, however, the Court rejects this aspect of Icon's bond-argument.

Icon also argues that the interests of justice can require a defendant to post a bond as a condition of vacatur, even where service was improper. Icon cites two out-of-circuit cases for this proposition. *See* Dkt. 29 (citing *Guess ?, Inc. v. Chang*, 163 F.R.D. 505, 508 (N.D. Ill. 1995); *Bennett v. Circus U.S.A.*, 108 F.R.D. 142, 149–50 (N.D. Ind. 1985)). As an initial matter, the Seventh Circuit appears to apply a different standard to motions to vacate a default judgment than does the Second Circuit. The Second Circuit has a strong "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)). By contrast, in the Seventh Circuit, "[i]n general, a party seeking to vacate a default judgment faces an uphill battle." *Chang*, 163 F.R.D. at 507 (citing *Zuelzke Tool & Eng'g Co., Inc. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 229 (7th Cir. 1991) (collecting cases)).

In any event, these two cases are easily distinguishable from this one. In *Bennett*, the defendant "orally represented to the court a willingness to post a bond as a condition for setting aside the [default] judgment," a willingness that defendant later reiterated twice and on which the court relied. 108 F.R.D. at 150. Moreover, the defendant in *Bennett* had been "extremely delinquent," and plaintiff's counsel had "been hunting for [defendant] for several years now." *Id.* at 149–50. Neither fact is present here. And in *Chang*, which relied heavily on *Bennett*, there

was concern that the "defendants were diverting assets and posed a flight risk," and therefore the court directed defendants to turn over certain personal property, including items "possessing great sentimental value." 163 F.R.D. at 508. There are no comparable allegations here.

To be sure, Eastside took a big gamble when it elected not to appear. But the critical facts are that Icon sued the wrong entity, *and* it served that incorrect entity improperly, and therefore the default judgment must be vacated. Eastside's conduct does not suggest a diversion of assets or otherwise bespeak the sort of egregious conduct that justifies requiring the posting of a bond as a condition of vacating the default judgment. For the same reasons, the Court declines to *sua sponte* order the posting of a bond as a condition of *vacatur*. The Court expects, of course, that Nils will not take action to dissipate its assets, and remains open to granting appropriate relief upon a showing of any such dissipation.

*Third*, Icon asks the Court to "exercise its inherent power to sanction Eastside for its willful disobedience" of the Court's July 2014 order to show cause, and to award Icon its attorneys' fees of more than $84,000. Dkt. 29. In its July 15 decision, the Court explained that, under the American Rule, Icon is not entitled to attorneys' fees because Eastside was correct on the merits of its motion. In its motion for reconsideration, Icon correctly points out that there is an exception to the American Rule, whereby "a court *may* assess attorney's fees as a sanction for the 'willful disobedience of a court order.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975)) (emphasis added). The Court here considered imposing sanctions. Ultimately, however, the Court's judgment is that sanctions are not warranted here. Eastside was, in fact, correct: The Court's orders were a nullity because Icon sued a non-suable entity and served improperly. And Icon's errors could easily have been avoided. For instance, had Icon conducted a brief search of

publicly available documents, as it later did, it would have known that the proper defendant was in fact Nils. Both parties therefore significantly erred. In such a situation, the Court's judgment is that attorneys' fees are not warranted. Rather, each side will bear the costs of its own choices and errors.

Icon's motion for reconsideration is, therefore, denied in the entirety.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: July 28, 2015
       New York, New York